# AMERICAN HOME LIFE INSURANCE COMPANY v. CERRONE.

---

LANDLORD AND TENANT; EVIDENCE; LEASE; EXEMPLARY DAMAGES.

1. Where the owner of several adjoining stores, after renting one of them for a term of five years and receiving one month's rent in advance, $50, retook possession of the leased premises and tore down the partition between it and one of the adjoining stores, it is error for the trial court, in an action by the tenant against the landlord to recover damages for the invasion of his leasehold, in which the plaintiff's evidence is that his lease was worth just what he had agreed to pay for it, namely, $50 a month, to permit the introduction in evidence by the plaintiff of a lease made by the defendant of all the stores as evidence of the value of the one leased to the

plaintiff, where the lease so offered does not show that the store leased to the plaintiff was worth more than the amount he agreed to pay, but rather tends to show to the contrary.

**2.** Exemplary damages may be recovered for a wilful, wanton, and oppressive use of the landlord's power; and it is not necessary that there should be substantially actual damages as a foundation for the recovery of exemplary damages. (Following *Washington Post Co.* v. *O'Donnell, ante,* 215).

No. 2769. Submitted April 6, 1915. Decided April 26, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action of trespass by a tenant against the landlord.

*Reversed*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment for damages for the invasion of plaintiff's leasehold and injury done his possession. The case was tried upon the fourth count of the declaration, which reads as follows:

"The plaintiff, Gelsomino Cerrone, sues the defendant, American Home Life Insurance Company, a corporation having offices and doing business in the District of Columbia, for that the said plaintiff was lawfully possessed of a leasehold interest in the first floor of 503 G street, northwest, city of Washington, District of Columbia, for a period of five years, and had rented the same from the defendant for the purpose of carrying on a barber shop, and had placed in said premises certain fixtures necessary for the purpose of fixing up said premises as a modern barber shop, said fixtures consisting of certain plumbing fixtures, gas fixtures, pipes, and said premises were in the proper condition for placing therein barber chairs, basins, tables, and everything necessary for a modern barber shop; that while said plaintiff was so lawfully in possession thereof, the said defendant, with force and arms, on the 2d day of December, 1912, in the city of Washington, District of Columbia, broke and entered

the said premises, destroyed the said fixtures therein, including the said pipes and everything mentioned aforesaid, and since said day aforesaid has continued to keep the said plaintiff out of possession thereof.

"Wherefore the plaintiff was damaged in the sum of five thousand dollars ($5,000), and plaintiff claims the said sum, besides costs of suit."

Plaintiff introduced evidence tending to show that he is a barber and entered into negotiations with the defendant for the leasing of premises 503 G street, northwest, and that a lease was executed to him November 15, 1912, for five years from December 1st, at $50 per month, for two and one-half years, and $55 per month for the remaining two and one-half years, with privilege of subletting upon the consent of the lessor. He paid the first month's rent of $50, and took a receipt therefor and received the lease. He borrowed $500 to fix up his place, paid the plumber $15 for work, and deposited in the gas office $10. He bought fixtures for the shop in the form of barber chairs. The lease was worth every bit of the $50 which he paid. Barber shops in the neighborhood rented for $35 per month. Witness had paid $22.50 for one place. Witness paid $280 for chairs, which he now has stored in his shop to keep them from rotting. That he agreed with the agent of defendant to lease number 507 if he would rent it for $45 per month, otherwise would retain number 503.

Other testimony tended to show that plaintiff had leased 503 G street and put up a notice on Saturday night that he would open a barber shop there. On Monday workmen were tearing down partitions and the sign was down.

Plaintiff offered in evidence a lease executed by the defendant to the White House Lunch Room people on November 30, 1912, for premises 501, 503, and 505 G street, northwest, for two and one-half years at $180 per month, and the remaining two and one-half years at $200 per month.

Counsel for defendant objected to this lease and excepted to its introduction.

Defendant's agent, called by plaintiff, testified that he knew

when he leased the premises to the White House Lunch Room people that it would be necessary to move the partition.

A plumber testified that he undertook to install a boiler and hot water heater for plaintiff in premises 503 G street, charging $25 for the job. Did not finish the job because defendant's agent stopped him; was paid $15 for work done.

Defendant's testimony tended to show that he agreed to let plaintiff 503 G street, which had been a drug store; that between 501 and 503 he had run a partition. Agreed to let 501 for $80 per month, and 503 for $50. 505 and 507 were worth $50 each per month. Between the time that the lease was executed to the White House Lunch Room people and their taking possession, defendant talked with plaintiff about fixing up 507 for him. The White House Lunch Room people were in the corner a week before taking possession of 503. After plaintiff declined to take 507, defendant tendered him $50 back, which he declined, saying he would let defendant out of it for $200, which defendant refused. Premises 503, 505, and 507 were exactly of the same size. 507 had been rented at $45 per month. Plaintiff had locked the premises 503 when defendant tore out the partition between it and 501. On the trial defendant tendered back the $50 paid by plaintiff, which his counsel received. This had not been claimed as damages in the fourth count.

Counsel for defendant requested the court to charge the jury that they could only find nominal damages, because there was no evidence that the lease was worth more than $50 per month.

The court refused this instruction.

The court left to the jury the question of whether the plaintiff's lease was for 503 or 507, and charged them that the measure of damages was the difference between the value of the leased premises and what plaintiff had agreed to pay. The jury were permitted to find exemplary damages, if they found that defendants had acted in a high-handed way in entering upon 503, and had acted wantonly and with a reckless disregard of the rights of plaintiff. This was objected to also and exception taken.

The jury were then instructed to assess the actual damages and exemplary damages in separate sums.

They returned a verdict for $650 actual, and $500 exemplary, damages.

*Mr. W. Gwynn Gardiner* and *Mr. Blaine Coppinger* for the appellant.

*Mr. Daniel W. Baker* and *Mr. John W. Staggers* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

We think it was error to permit the introduction of the lease as evidence of the value of 503.

There was no evidence tending to show that the corner, 501, was worth no more than the other rooms. On the contrary, the evidence tended to show that room was rented always at $80 per month, which left $100 for the other rooms, 503 and 505. The only evidence offered by plaintiff was that the lease on 503 was worth just what he had agreed to pay for it, namely, $50 per month. The only actual damage shown was the charge of the plumber of $15. Aside from this there was no evidence that 503 was worth more than the amount paid for it.

The question of the right to recover exemplary damages may be briefly considered.

There is no doubt that exemplary damages may be recovered for a wilful, wanton, and oppressive use of the landlord's power, nor is it necessary that there should be substantially actual damages as a foundation for the recovery of exemplary damages. *Washington Post Co.* v. *O'Donnell,* present term [*ante,* 215].

The judgment is reversed with costs, and the cause remanded for a new trial.    *Reversed.*