402 P.2d 225

Robert B. JOHNSON, Appellant,

v.

Donald F. HILL, Charles A. Stephens, Jr.,
W. Paul Holbrook and William L.
Goodin, Appellees.*

No. 2 CA–CIV 41.

Court of Appeals of Arizona.

May 10, 1965.

Rehearing Denied June 9, 1965.

Murphy & Vinson, by James M. Murphy, Tucson, for appellant.

Norman S. Hull, Tucson, for appellees.

KRUCKER, Chief Judge.

This appeal involves a dispute arising out of a medical partnership. The appellant (plaintiff below), Dr. Johnson, sought an accounting for his share of the net worth of the partnership from the defendants, Doctors Holbrook, Stephens, Hill and Goodin. The lower court, sitting without a jury, found for the defendants. No written findings of fact or conclusions of law were made by the court.

A chronological sequence of events will be discussed in order to understand the nature of the dispute.

In 1934, Dr. Holbrook entered into a medical partnership with Dr. Hill in Tucson, Arizona. Dr. Stephens was admitted into the partnership in 1946. In 1950, Dr. Johnson, the plaintiff, was employed on salary by the then existing partnership. In

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7771. The matter was referred to this Court pursuant to Section 12–120.-23 A.R.S.

1960, Dr. Johnson became the fourth member in the partnership. Articles of partnership were drawn up, giving Dr. Johnson a 23.5% share of net profits. Dr. Goodin was made a partner on January 1, 1961, by oral agreement with the unanimous consent of the other partners. It was this oral agreement that caused the dispute in the settling of accounts when Dr. Johnson left the partnership. Plaintiff contends that this oral agreement revoked the written articles, and therefore he is entitled to a percentage of the net worth of the partnership. Defendants contend that plaintiff is entitled only to certain insurance policies and the amount shown in his capital account, in accordance with the written articles. The plaintiff received the policies and the amount in his capital account. These payments are not the subject of this appeal.

On May 1, 1961, a meeting was held in which percentages of profits were discussed. Doctors Johnson and Goodin were requested to acquiesce to a reduction of their percentage to approximately 19%. It was a short time after this meeting that Dr. Johnson terminated his relationship with the partnership.

Two provisions of the articles of partnership of 1960 are of importance in this case:

"Article III—Contingencies

1. With the unanimous consent of the then existing partners, new partners may be admitted into the partnership at any time. Each new partner shall adopt and subscribe to these Articles by affixing his signature to "Schedule A—Partnership Interests" (hereunto annexed and by reference made a part hereof, and shall adopt and subscribe to any other terms and conditions which may then be imposed.

2. * * * Upon such withdrawal, he shall be entitled to receive, and there shall be assigned to him forthwith in full payment for his interest in the partnership, only such policy or policies of life insurance as is or are then being carried on his life by the partnership, * * *."

On January 1, 1961, when Dr. Goodin was unanimously accepted as a partner, he did not sign the articles of 1960, nor were they ever signed by him. Plaintiff thus contends that as of January 1, 1961, there was a new partnership based on the oral agreement, and the formation of this new partnership revoked the written articles of partnership. It is further contended by plaintiff that provision 2 of the articles dealing with withdrawal is not applicable inasmuch as the articles were revoked. Defendants claim, and they prevailed in the lower court, that the articles were never revoked but that the partnership continued to operate under the 1960 articles, as modified only to the extent of adjusting profit percentages so that Dr. Goodin could receive his share.

Article III, dealing with admission of new partners, specifically states that the new partner shall adopt and subscribe to the articles by affixing his signature thereto. The evidence is clear that this was not done by Dr. Goodin.

■ It is a well-established general rule than an existing partnership is dissolved and a new partnership is formed whenever a partner retires or a new one is admitted. In other words, every change in the personnel of a firm works a dissolution. 40 Am. Jur. Partnership § 242. This general rule would apply unless something in the agreement provides otherwise. The written agreement in this case did provide for admission of new partners, but said provision was not complied with.

■ This leads us to the conclusion that upon Dr. Goodin's admittance the old partnership of January 1, 1960 to January 1, 1961, consisting of Doctors Holbrook, Hill, Stephens, and Johnson, was terminated as a matter of law. See A.R.S. § 29–229, Ellingson v. Walsh, O'Connor & Barneson (1940), 15 Cal.2d 673, 104 P.2d 507. Thereafter, a new partnership was formed consisting of Doctors Holbrook, Hill, Stephens, Johnson, and Goodin. There is no argument that a partnership may be formed

by oral agreement, 68 C.J.S. Partnership § 4, in absence of statutory regulation.

The question therefore remains, was there evidence at the trial to show that the new partnership by oral agreement was to exist and abide by the written articles of the terminated partnership.

The Uniform Partnership Act is silent as to the possible continuance of written articles into a new oral agreement, so we must turn to case law. A.R.S. § 29–205, Wild v. Commissioner of Internal Revenue (C.C.A. 2, 1933), 62 F.2d 777. Neither the plaintiff nor the defendants has cited cases to this court which are in exact point. The defendants cite two cases which are of considerable aid. One is Keyes v. Nims (1919), 43 Cal.App. 1, 184 P. 695.

In that case, there was a written agreement that the two parties, Keyes and Nims, would share an equal interest in a business deal with X Company, involving a royalty. Later Keyes and Nims offered Clark, by mutual consent, one-sixth of their respective interests. A later dispute developed when Clark sold his interest to Nims, and Nims sold his royalty contract back to X Company. Keyes brought action to secure the dissolution between the parties and for an accounting. Nims, the defendant, argued that when Clark was admitted into the partnership upon the terms then agreed upon that each should contribute an equal amount to finance the concern, an entirely new contract was made which superseded and abrogated the original agreement between plaintiff and defendant.

The court held that the taking of Clark into such partnership did not constitute the making of such an agreement as would operate to supersede and abrogate the original agreement.

This Court recognizes that the Keyes opinion did not decide whether there was a new partnership formed when Clark was admitted.

The other case cited by the defendants was Frett v. Benjamin (3 Cir.1951), 187 F.2d 898, which concerns the withdrawal of a partner which would, of course, be the direct opposite of an admission of a new partner in this case. But this Court believes this is an analogous situation to that of this case.

The Frett case held:

"Even though Edwardo Newton's withdrawal from the partnership at the outset of its activities dissolved it under § 29 of the Uniform Partnership Act, * * *, it does not follow that the partnership agreement ceased to define the rights, duties and obligations of the partners with respect to one another. Undoubtedly they carried on as partners after Newton's retirement from the venture, and if the partnership rested upon a parol understanding, it is evident that by that understanding they adopted the provisions of the written partnership agreement. * * *"

Therefore, we must look to the evidence to see if the five partners to the oral agreement did intend to adopt the old articles of partnership for determining their rights and duties in their new partnership.

"It is our steadfast rule that we will not disturb the finding and judgment of the trial court based upon conflicting evidence regardless of whether it was tried to the court or to a jury. (Citations) Under such circumstances the evidence will be taken in the strongest manner in favor of the plaintiff and in support of the court's findings, and the judgment will not be disturbed when there is any reasonable evidence to support it." (Citations) Bohmfalk v. Vaughan (1960), 89 Ariz. 33, 357 P.2d 617.

In the present case, the plaintiff, Dr. Johnson, testified that the written agreement was not discussed at the meeting in which Dr. Goodin was admitted to the partnership. He also testified that there was no conversation that under the oral agreement they would operate according to the provisions of the written agreement. He testified that a new paper was handed around but that he only noticed the new percentages.

In contrast, Dr. Goodin testified that a new written agreement (after Dr. Johnson had departed) was the same as they had always been under as far as he knew. Dr. Holbrook testified that he brought a copy of the old written agreement to the meeting to point out that under the new arrangement they would continue to operate under the written agreement. Doctors Stephens and Hill corroborated Dr. Holbrook in that the latter did have a copy of the written agreement with him. They also testified that all the old partners were to bring their copy in so that Dr. Goodin could sign them.

 It is thus apparent to the Court that there is conflicting evidence as to the Doctors' intention concerning the written Articles. The lower court chose to believe the defendants. Upon a reading of the transcript of testimony, we find ample evidence to support the finding of the lower court.

 Plaintiff's second and third assignments of error concern admission of certain evidence which supposedly was designed to impeach and attack the character and credibility of the plaintiff.

Our Supreme Court has laid down a well-established rule, in which this Court shall follow.

In the case of Home Owners' Loan Corp. v. Bank of Arizona (1939), 54 Ariz. 146, 94 P.2d 437, the court said:

"The appellant complains of the court's rulings on the admission of evidence over its objections, such objections being upon various grounds. We do not discuss these assignments for the reason that we assume that if the court received improper evidence it did not consider it but considered only the competent evidence. When a case is tried to the court without a jury, even though improper evidence is offered and received, if the competent evidence is sufficient to support the judgment it will be sustained regardless of the error."

See also, Bonine v. Bonine (1961), 90 Ariz. 319, 367 P.2d 664; State v. Garcia (1964), 97 Ariz. 102, 397 P.2d 214.

As stated previously in this opinion, there is ample evidence in the record to support the lower court's finding.

The judgment of the lower court is affirmed.

MOLLOY, J., and ROBERT O. ROYLSTON, Superior Court Judge, concur.

NOTE: The Honorable JAMES D. HATHAWAY, having requested that he be relieved from consideration of this matter, Judge ROBERT O. ROYLSTON was called to sit in his stead and participate in the determination of this decision.