**William J. TROUPE et al.,**
**Appellants,**

v.

**Milford J. SEBY et al.,**
**Appellees.**

**No. 23029.**

United States Court of Appeals Ninth Circuit.

Sept. 11, 1969.

As Modified on Denial of Rehearing Nov. 18, 1969.

Norman S. Hull (argued), of Dowdall, Harris, Hull & Terry, Tucson, Ariz., Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for appellants.

John D. Lewis (argued), of Holman, Lewis, MacArthur & Carver, Tempe, Ariz., for Henricks.

Robert S. Tullar (argued), of Chandler, Tullar, Udall & Richmond, Tucson, Ariz., for Seby.

Before BARNES and KOELSCH, Circuit Judges, and WILLIAMS, District Judge*.

BARNES, Circuit Judge:

This is an appeal in a diversity of citizenship action by two citizens of Kansas City, Missouri, where they maintain their principal office for the practice of their profession as Certified Public

---

* Hon. David W. Williams, United States District Judge, Los Angeles, California, sitting by designation.

Accountants. Plaintiffs sue as copartners of Troupe, Kehoe, Whiteaker and Kent, an Arizona partnership (hereinafter T.K.W.K.-Ariz. or Arizona Partnership). They sue the defendants, who are both citizens of Arizona, and who maintain their offices to practice their profession as Certified Public Accountants and resident partners of T.K.W.K.-Ariz. in Arizona.

The cause of action as expressed is one for a partnership accounting, dissolution of the partnership, and damages for breach of contract. Judgment was recovered for $14,403.85 against defendant Henricks and for $11,298.66 against defendant Seby; the Arizona partnership was dissolved; and an accounting rendered. The amount awarded as damages against each defendant is precisely the amount of the deficit in each defendant's partnership capital account. Appellants protest the inadequacy of the damages awarded.

Appellants alleged and defendants admitted that the recovery sought exceeds $10,000, exclusive of interest and costs. Jurisdiction in the district court rested on 28 U.S.C. § 1332, and rests here on 28 U.S.C. § 1291.

The record before us is lengthy, complicated and confusing. It would serve little purpose to detail all the circumstances surrounding this dispute, and we will refer only to such factual evidence as may be necessary or convenient to explain our decision. Because of the unusual factual background, this opinion will be of little, if any, precedential value.

We start with the explanation that appellants were not only partners in the Arizona partnership, but likewise partners in "Troupe, Kehoe, Whiteaker and Kent," of Kansas and Missouri (hereinafter sometimes called the "Executive Office Partnership," or E.O.P. or TKWK-EOP).

We next turn to the court's Amended Findings of Fact (C.T. 664) and the Amended Judgment (C.T. 674). We quote material portions in the margin.[1]

---

1. " * * *

"3. That from and after August 1, 1961, the defendant, R. Keith Henricks, was a partner in the Arizona partnership of Troupe, Kehoe, Whiteaker & Kent, Arizona, at all times material to this action.

"4. Plaintiffs and defendants and one Benard R. McMorris were the partners of the Arizona partnership as of January 1, 1965. (Trial Exhibits 4 and 5)

"5. That from and after January 1, 1964, the defendant Milford J. Seby, was a partner in the Arizona partnership of Troupe, Kehoe, Whiteaker & Kent, Arizona, at all times material to this action.

"6. The said Benard R. McMorris withdrew from the partnership by agreement dated February 3, 1965 (Trial Exhibit 7), his withdrawal becoming effective as of March 1, 1965. Defendant Seby took no part in the negotiations resulting in the McMorris withdrawal, and gave no consent thereto, either in writing or orally. Trial Exhibits 7 and 8 which pertain to the McMorris withdrawal were executed by parties other than defendant Seby and without his consent or knowledge.

"7. On February 3, 1965, following the execution of the agreement which is Trial Exhibit 7, defendant Henricks and plaintiff Troupe discussed a new partnership agreement now that McMorris had withdrawn. It was agreed in this discussion to wait until after the tax season.

"8. On June 23, 1965, an agreement was entered into by and between the executive office partnership, the Arizona partnership of Troupe, Kehoe, Whiteaker & Kent and Benard R. McMorris, which said agreement is Trial Exhibit 8.

"9. Negotiations towards a new partnership agreement were carried on intermittently until August 7, 1965.

"10. On August 7, 1965, defendant Henricks notified plaintiffs and defendant Seby of his intention to withdraw from the partnership effective November 5, 1965.

"11. On August 9 and 10, 1965, defendants and each of them were assured by plaintiffs that both the Phoenix and Tucson offices would be adequately staffed by personnel from the plaintiffs' Kansas City offices a sufficient time prior to defendants' departure. This assurance was reiterated by plaintiffs to both defendants in writing.

"12. Pursuant to this assurance by plaintiffs, on August 13, 1965, defendant Henricks notified plaintiffs and defendant Seby in writing of his intention to with-

draw from the partnership effective September 15, 1965.

"13. Pursuant to this assurance by plaintiffs, on August 19, 1965, defendant Seby notified plaintiffs and defendant Henricks in writing of his intention to withdraw from the partnership effective September 15, 1965.

"14. Upon being told by plaintiffs that one Kenneth Hammes would be available to staff the Tucson office on September 30, 1965, defendant Seby modified his termination date to September 30, 1965.

"15. Defendants Henricks and Seby proceeded to arrange for the opening of their own offices immediately after terminating their association with plaintiffs. Despite their assurances to the contrary, plaintiffs sent no personnel to Arizona prior to September 27, 1965, twelve days after defendant Henricks had left the Phoenix office, when one David Higdon, CPA, was sent from Kansas City to investigate the status of affairs at Phoenix, and to proceed to Tucson, where he arrived on September 30, 1965, to investigate the status of the Tucson office.

"16. That the defendant, R. Keith Henricks, withdrew from the partnership of Troupe, Kehoe, Whiteaker & Kent, Arizona, and left the office thereof on September 15, 1965.

"17. That the defendant, Milford J. Seby, withdrew from the partnership of Troupe, Kehoe, Whitaker & Kent, Arizona, and left the office thereof on September 30, 1965.

"18. Defendant Henricks wrongfully opened his own office in Phoenix for the practice of public accounting on September 16, 1965.

"19. Defendant Seby wrongfully opened his own office in Tucson for the practice of public accounting on October 1, 1965.

"20. That wrongfully within a reasonable time after their withdrawal from the partnership, the defendants rendered to clients of the Arizona partnership of Troupe, Kehoe, Whitaker & Kent, accounting services, and deprived said partnership of its clients.

"21. That the plaintiffs intentionally failed and refused to provide any personnel for the Phoenix office of Troupe, Kehoe, Whiteaker & Kent, Arizona, prior to September 27, 1965, which was twelve (12) days after the defendant R. Keith Henricks, left said Phoenix office.

"22. That the plaintiffs intentionally failed and refused to provide any personnel for the Tucson office of Troupe, Kehoe, Whitaker & Kent, Arizona, prior to September 30, 1965, the day upon which the defendant, Milford J. Seby, was leaving said office.

"23. That the certified public accountant finally sent to the Phoenix office by the plaintiffs stayed only three (3) days contacted only eleven (11) out of one hundred forty-two (142) accounts and did no accounting work for any of the clients of the Phoenix office of Troupe, Kehoe, Whiteaker & Kent, Arizona.

"24. That the certified public accountant finally sent to the Tucson office by plaintiffs stayed only several days, contacted almost no accounts in the Tucson area, and did accounting work for only one client of the Tucson office of Troupe, Kehoe, Whitaker & Kent.

"25. That the plaintiffs wrongfully made no attempt to employ any fulltime employees or certified public accountants for either the Phoenix or the Tucson office of Troupe, Kehoe, Whiteaker & Kent.

"26. That the office of Troupe, Kehoe, Whiteaker & Kent, Arizona, in Phoenix closed on or about October 28, 1965.

"27. That the office of Troupe, Kehoe, Whiteaker & Kent, Arizona, in Tucson closed on or about October 28, 1965.

"28. That no reasonable efforts were made by plaintiffs with due diligence for the maintenance of personnel and services for clients of Troupe, Kehoe, Whiteaker & Kent, Arizona, at the Phoenix or Tucson, Arizona, offices of Troupe, Kehoe, Whiteaker & Kent, Arizona, for the orderly transfer of accounts and services in progress to clients or to obtain new personnel after notification by the defendants that they were leaving, even though the plaintiffs could have done so by reasonable efforts, and even though assurances were made by the plaintiffs to said defendants and each of them that such would be done.

"29. That the plaintiffs have failed to prove to what extent they were damaged by the conduct of the defendants insofar as any breach of the partnership agreement is concerned.

"30. That upon an accounting and a balancing of the equities, the defendants owe to the plaintiffs the repayment of their respective capital account deficits as shown by plaintiffs' Exhibit 79, to-wit: Fourteen Thousand Four Hundred Three and 85/100 Dollars ($14,403.85) as to the defendant, R. Keith Henricks and Eleven Thousand Two Hundred Ninety-Eight and 66/100 Dollars ($11,298.66) as to the defendant, Milford J. Seby.

"31. That as a result of such accounting and balancing of the equities, no other

sums are due from the defendants to plaintiffs except the amounts herein set forth. That the plaintiffs have failed to prove that any other relief is due to them other than as set forth herein." (Amended Findings of Fact, C.T. 664–669.)

"CONCLUSIONS OF LAW

"1. The court has jurisdiction of this case and of the subject matter thereof, and has personal jurisdiction of all of the parties thereto and has jurisdiction to render judgment therein.

"2. That defendants became and at all material times were partners in the Arizona partnership.

"3. That defendants wrongfully withdrew as such partners.

"4. That within a reasonable time after their withdrawal from the partnership defendants wrongfully rendered to clients of the Arizona partnership accounting services, and wrongfully obtained and deprived that partnership of its clients, all to the great damage of plaintiffs.

"5. That from and after the occurrence of such damage these plaintiffs and said partnership failed and neglected to mitigate and failed to use due diligence to mitigate the damages sustained by them.

"6. That the balance of the equities in favor of and against the parties requires that the defendants, and each of them, repay their respective capital account deficits as shown by plaintiffs' Exhibit 79, and that plaintiffs recover no other sums and no further or other relief from defendants and that defendants recover no sum of money or other relief against the plaintiffs.

"7. That the capital account deficit of R. Keith Henricks as shown in plaintiffs' Exhibit 79 is Fourteen Thousand Four Hundred Three and 85/100 ($14,403.85) Dollars; that the capital account deficit of Milford J. Seby as shown in plaintiffs' Exhibit 79 is Eleven Thousand Two Hundred Ninety-Eight and 66/100 ($11,298.66) Dollars.*

"8. That the parties respectively pay their own costs.

"\*     \*     \*     \*     \*

"\*7a. The Court has rendered its accounting herein as stated in its findings and conclusions hereinabove made. The Arizona partnership of which plaintiffs and defendants were members should be dissolved and terminated. All other or further relief requested by the parties should be denied." (C.T. 669–670.)

"AMENDED JUDGMENT

"This cause coming on regularly for trial before the Court, sitting without a jury, the plaintiffs appearing in person and by their attorneys, NORMAN S. HULL, ESQ. and ROBERT D. YOULE, ESQ., the defendant, R. KEITH HENRICKS appearing in person and by his attorney, JOHN D. LEWIS, ESQ., the defendant, MILFORD J. SEBY appearing in person and by his attorney, ROBERT S. TULLAR, ESQ., and testimony having been adduced by and on behalf of all parties and the Court having heard the arguments of counsel, and having considered the matter, and the Court having on February 20, 1968, made Findings of Fact, and the Court having made amended Findings of Fact on the 8th day of March, 1968, pursuant to motion timely made by defendants, and the Court having stated separately its Conclusions of Law thereon,

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, as follows:

"1. That judgment be and it is hereby entered in favor of WILLIAM J. TROUPE and STANLEY C. WHITEAKER, d/b/a co-partners under the firm name and style of TROUPE, KEHOE, WHITEAKER & KENT, an Arizona partnership, plaintiffs, and against defendant R. KEITH HENRICKS for the sum of Fourteen Thousand Four Hundred Three and 85/100 dollars ($14,403.85).

"2. That judgment be and it is hereby entered in favor of WILLIAM J. TROUPE and STANLEY C. WHITEAKER, d/b/a co-partners under the firm name and style of TROUPE, KEHOE, WHITEAKER & KENT, an Arizona partnership, plaintiffs, and against defendant MILFORD J. SEBY for the sum of Eleven Thousand Two Hundred Ninety-Eight and 66/100 Dollars ($11,298.66).*

"3. That all parties bear their own costs.

"DONE IN OPEN COURT this 8th day of March, 1968.
"\*     \*     \*

"\*2a. The Court has rendered its accounting herein as stated in its amended findings and conclusions and the above provisions. The Arizona partnership of which plaintiffs and defendants were members is dissolved and terminated. All other or further relief requested by the parties is hereby denied." (C.T. 673–674.)

As one example of the problems in the presentation of this case on appeal, appellants vigorously assert that the rights of the parties must be determined by Plaintiffs' Exhibit 4 (the partnership agreement of January 3, 1962), as amended by Plaintiffs' Exhibit 5, dated January 2, 1964. This is an unusual position to maintain in view of (a) partnership law, as expressed generally in the Uniform Partnership Act, and in the Arizona law based on the cases arising before that state adopted the said Act, and hereafter, and (b) the following facts:

1. One of the partners, Kenneth S. Hammes, purportedly withdrew from the partnership as of June 30, 1964 by means of a document (Ex. 6) dated May 2, 1964, and *signed only by William J. Troupe and K. S. Hammes.* It was never executed by either defendant (R.T. 564) or by a third resident partner, McMorris.

2. One of the partners, Benard R. McMorris, withdrew from the partnership by agreement dated February 3, 1965. (Ex. 7.) Defendant Seby took no part in the negotiations resulting in McMorris' withdrawal, and gave no consent thereto, either in writing or orally. (Amended Finding of Fact No. 6.)

3. A "termination agreement" was purportedly entered into on June 23, 1965 *(prior to defendants' alleged breach)* between TKWK (Ariz.), TKWK (EOP) and Benard R. McMorris. (Ex. 8.) If it be considered the valid act of each partnership with respect to the other, and with respect to McMorris, and if it is binding on all Arizona partners involved, it acknowledges that:

*"Each of the respective covenants in the \* \* \* agreements [i. e., (1) the partnership agreements of January 2, 1961, (2) of January 3rd, 1962, (3) of February 3, 1965, and (4) the buy and sell agreement of November 13, 1960, as amended May 4, 1964 and February 3, 1965] are [sic] hereby acknowledged to be fulfilled, satisfied*

*and terminated and all sums which may be due to the respective parties under said agreements are hereby deemed paid in full."* (Emphasis added.)

Thus the previous partnerships were dissolved, and an accord and satisfaction entered into at least between those partners signing the agreement.

Arizona adopted the Uniform Partnership Act (hereinafter U.P.A.) in 1954. (A.R.S.-(Anno.) §§ 29–201 to 29–244.) It is identical with the Uniform Partnership Act adopted by California in 1954 as far as the first 43 sections are concerned. Cal.Corp.Code §§ 15001–15045 (West 1955).

Each contains identical sections 29,[2] which read:

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business."

Each contains identical sections 18,[3] which set up "rules" reading:

"All partners have equal rights in the management and conduct of the partnership business."

"No person can become a member of a partnership without the consent of all the partners."

These general rules are each qualified by the proviso that they are "subject to any agreement between" the parties.

The view that the parties *intended* to terminate the partnership is strengthened by the subsequent negotiations between Whiteaker and Henricks during early August 1965 with respect to the formation of a new Arizona partnership. Seby did not take part in these negotiations, although Henricks requested he be allowed to do so, Whiteaker refusing (R.T. 1371–74).

The view that the parties did *not* intend to terminate the Arizona partner-

---

2. Ariz. § 29–229 and Calif. § 15029.

3. Ariz. § 29–218, subsecs. 5 and 7 and Calif. § 15018(e) and (g).

ship by reason of the June 23, 1965 document is supported by Henricks' giving a 90 day notice of termination on August 7, 1965 (Ex. 24) as required by the January 3, 1962 agreement; and Seby's subsequent notice of termination which did not conform to the 90 day requirement of the January 3, 1962 agreement, but which did recognize the then existence of a partnership relationship.

The usual rule of law with respect to partnerships is that the death or withdrawal of one partner terminates a partnership for all purposes except winding it up. A new partnership must be organized if the business is to be carried on.

Arizona adopted the definition hereinabove quoted of what constitutes a dissolution of a partnership.

In one of the leading Arizona cases the Court of Appeals of that state states:

"It is a well-established general rule than [sic] an existing partnership is dissolved and a new partnership is formed whenever a partner retires or a new one is admitted. In other words, every change in the personnel of a firm works a dissolution. 40 Am. Jur. Partnership § 242. *This general rule would apply unless something in the agreement provides otherwise.*" Johnson v. Hill, 1 Ariz.App. 290, 402 P.2d 225 at 226 (1965) (emphasis added).

Plaintiffs' Exhibit 4 in this case does not provide a plan or method for the admission of new partners.[4] Thus the general rule would apply and the original partnership dissolved "whenever a new partner was admitted." It might be urged that the parties orally agreed that an existing partner could leave, or a new one could enter the partnership. But as we have seen (Example No. 2, *supra*), partner Seby not only did not consent; he never knew of the arrangement. (See also Example No. 1, *supra.*)

The Johnson v. Hill case, *supra*, at 227, also states that the U.P.A. "is silent as to the possible continuance of written articles into a new oral agreement, so we must turn to case law. A.R.S. § 29–205, Wild v. Commissioner of Internal Revenue, (C.C.A.2, 1933), 62 F.2d 777."

After an inconclusive discussion it permits the issue to rest on the findings and judgment of the trial court based upon conflicting evidence. " 'Under such circumstances the evidence will be taken in the strongest manner in favor of the plaintiff and in support of the court's findings, and the judgment will not be disturbed when there is any reasonable evidence to support it.' (Citations) Bohmfalk v. Vaughan (1960), 89 Ariz. 33, 357 P.2d 617." Johnson v. Hill, *supra* at 227.

We recognize that the district court here made no finding that the partnership was dissolved. The parties have made no claim that Exhibit 8 terminated the earlier partnership agreement,[5] de-

---

4. Other than the inaccurate reference in Appellants' Ex. 32 to the words "continuing partnership" allegedly appearing in Art. XI (see n. 6, *post*), there is no reference we can find in Plaintiffs' Ex. 4 to a "continuing partnership." No period of life for the partnership was specified. Any partner could withdraw upon 90 days' notice (Art. XI, Ex. 4), and the partnership could be dissolved at any time by mutual consent, or decision of the two Executive Office Partners (Art. XII, Ex. 4). See 10 Ariz.Rev.Stat. § 29–231 A 2. and B. ("Causes of Dissolution")

Nor is there any reference to a "continuing partnership" in Plaintiffs' Exhibit 5, or Plaintiffs' Exhibit 8. By its terms Plaintiffs' Exhibit 8 terminates all

"covenants" in the January 2, 1961 partnership agreement (not in evidence); the January 3, 1962 partnership agreement (Plaintiffs' Ex. 4) and the February 3, 1965 partnership agreement (Plaintiffs' Ex. 7).

The foregoing is a sparse recital of facts relating to *any* agreement for a continuing partnership, as contended for by appellants.

5. This legal theory that the partnership had actually been terminated was not unknown to either side prior to this litigation. See Plaintiffs' Ex. 13, letter of Seby to Troupe, June 9, 1965; Plaintiffs' Ex. 14, letter of Troupe to Seby, June 10, 1965; Plaintiffs' Ex. 15, letter of

spite its express terms, except for a recital of that fact in Appellees' Brief (pp. 6–7) with a reference to the court's amended finding of fact No. 8 (which merely states that Exhibit 8 was entered into by the parties signing it), and without reference to the court's conclusion of law No. 2 "that defendants were * * *at all material times* * * * partners in the Arizona partnership." (Emphasis added.) (C.T. 669.) We will not examine the 1600 pages of testimony to determine whether "termination" was ever urged below. Apparently the case was not tried on the theory that that issue was raised. The trial court held a partnership existed, and it found defendants had wrongfully terminated it. Appellees have not appealed from the judgment against them, and the issue therefore cannot here be raised by them.

Appellants have not raised the legal problem perhaps because of the provisions of Article V of the January 3, 1962 agreement which provides that "if the Resident Partner withdraws as provided in Article XI * * * Resident Partner will not be liable to pay to the Arizona Partnership any debit balance in his capital account." These debit balances totalled approximately $25,700 in mid-1965. But we prefer to assume that appellants' position was based on trial strategy; that of following the best legal theory which might support the largest award of damages. That, of course, is their right. The whole thrust of their appeal is that the Arizona partnership was a "continuing partnership." [6]

Appellees urge that the entire course of conduct of appellants indicates they "treated the assets of the partnership as though they [appellants] were the sole owners thereof, and in fact they so considered them. (Tr. 658.)" (Appel-lees' Brief, p. 13.) This statement appears to be accurate.

As one example, plaintiffs entered into an agreement with Central Broadcasting, Inc., whereby it was to transfer to plaintiff Whiteaker 12,750 shares of common stock of Central. (Ex. A–4.) In return the Arizona partnership was to perform all accounting services for three years. None of the defendants consented to this agreement, and defendant Seby never knew of it.

As a second example, on May 2, 1964, Troupe and Hammes executed Plaintiffs' Exhibit 6—an agreement affecting the assets and liabilities of the Arizona partnership. It was never executed by either defendant partner, nor by partners McMorris or Whiteaker individually, or by any partner acting for either the Arizona or EOP partnerships.

As a third example, the February 3, 1965 agreement (Plaintiffs' Ex. 7), whereby McMorris withdrew as a partner of the Arizona partnership, was executed by the two partnerships and McMorris, but without the consent or knowledge of partner Seby (Amended Finding of Fact No. 6, C.T. 670). Seby had been consulted previously about the sale of the Phoenix practice. (Plaintiffs' Ex. 80.)

As a fourth example, the July 1, 1964 agreement (Plaintiffs' Ex. 76) was signed by Whiteaker, Troupe and Henricks individually but not by either partnership, nor by defendant Seby. Yet it purported to increase the EOP partnership "cut" of the Arizona partnership business from 30% to 40%; to increase Henricks' "cut" from 18% to 28%; it eliminated Hammes' cut entirely; and it left Seby with no increase.

Having found the partnership existed at all material times, and that defend-

---

Seby to Troupe, July 6, 1965; Plaintiffs' Ex. 16, letter of Attorney Greer to Seby, June 15, 1965; Plaintiffs' Ex. 30, letter of Seby to Troupe, August 19, 1965.

6. Appellants' Ex. 32 (letter to Seby from Whiteaker) states the partnership articles specifically refer to a "continuing part-nership" under Article XI of Plaintiffs' Ex. 4, and specifically refer to "the continuing partners" after a withdrawal of a partner. Article XI (Plaintiffs' Ex. 4) specifically refers to "continuing partners" but not to a "continuing partnership."

ants had wrongfully withdrawn as partners, to plaintiffs' damage, the court also found "the plaintiffs and [Arizona] partnership had failed and neglected to mitigate damages, and had failed to use due diligence to mitigate such damages." (Amended Finding of Fact No. 5, C.T. 669.)

Balancing the equities, the trial court then concluded that, *as damages,* the defendants should pay an amount equal to their respective capital account deficits, as shown on Plaintiffs' Exhibit 79, and that plaintiffs should recover no other sums and no other moneys against defendants. (Amended Finding of Fact No. 6, C.T. 670.) The court further rendered an accounting; terminated the partnership; and ordered each party to pay costs. (C.T. 670, 673–74.)

We note that there was no finding, either at the preliminary hearing before another judge, or at the trial, that either defendant had solicited former partnership business.

We need not give a full recital here of the circumstances supporting the finding of a lack of due diligence on the part of the plaintiffs and appellants in attempting to mitigate damages.[7] While some evidence was conflicting, we are clearly convinced the preponderance of evidence favored such a finding and conclusion. The trier of fact, under Arizona law, was not bound to accept one partner's testimony in an action by a copartner against a partner for accounting and dissolution, since each partner was an *interested party.* Carrasco v. Carrasco, 4 Ariz.App. 580, 422 P.2d 411 (1967).

Appellants also urge that the evidence as to damages was so clear that the amount awarded—equal to the defendants' deficits in their partnership capital accounts—was inadequate.

The evidence on damages was in complete conflict, and vigorously disputed. Even the meanings of common terms used in Art. X of Exhibit were disputed.[8] The dispute raised the further question of alleged inadequacies and inaccuracies of Plaintiffs' Exhibits 71 and 72, upon which their claim of money damages rests.

Fourteen such inaccuracies or inadequacies are set forth in Appellees' Brief (pp. 14–15). Appellants' Reply purports to answer one or two specifically, but is largely content to urge upon us that Plaintiffs' Exhibits 71 and 72 were "exactly that called for by Art. X of the partnership agreement (Ex. 4),[9] and defendants' present contentions—never raised in any manner in the trial court is [*sic*] completely fallacious."

The trial court did not agree, nor do we. We refuse to set aside Findings of Facts and Conclusions of Law based on conflicting evidence, Johnson v. Hill, *supra*; Bohmfalk v. Vaughan, *supra*, unless clearly erroneous.

We find no error in determining the amount of damages payable nor in finding the plaintiffs made little, if any, effort to mitigate their damage. The negotiations in writing between the parties *looking toward* a new partnership agreement during the months from April to July, 1965, and the absolute knowledge

---

7. Specific instances of such alleged conduct are set out in eleven paragraphs on pages 9 and 10 of Appellees' Brief. *Cf. also,* Amended Findings of Fact, Nos. 28 and 29; Amended Conclusions of Law, No. 5; Appellees' Brief, paragraphs 30, 31, 32 and 33, pp. 11–14.

8. Article X (Plaintiffs' Ex. 4) states "if the Resident Partner is in violation of his agreement not to perform * * * accounting services * * * he shall pay to the firm an amount equal to the gross billings during the last fiscal year of each client for whom such services were performed." To read this as referring to "the last fiscal year of each client," say appellants in their Reply Brief, "is pure nonsense." (Page 9). Any explanation of the intention of the parties or the custom in the trade would have been more helpful to the court.

9. This despite testimony on cross-examination weakening the accuracy of the figures used in said Exhibits 71 and 72. (R.T. p. 603 to p. 620.)

**522**

that one partner was withdrawing (made known to the plaintiffs on August 7, 1965) required the plaintiffs to do something more than to send one Higdon to Phoenix on September 27, 1965 and Tucson on September 30, 1965. The trial court found the plaintiffs intentionally sent no aid to the Arizona partnership until those dates, despite earlier promises to do so. (Amended Findings of Fact 21 and 22; C.T. 667.) And when Higdon arrived, he stayed only a few days in both Phoenix and Tucson, contacted "very few" accounts in Tucson, and but 11 out of 142 accounts in Phoenix. He did no accounting work in either place except for one partnership client. (Amended Findings of Fact 23 and 24, C.T. 667–668.)

Aside from our reading of the evidence, we also have Amended Finding of Fact 25, that "the plaintiffs *wrongfully* made no attempt to employ *any* full time employees or Certified Public Accountants for either the Phoenix or the Tucson office * * *." (Emphasis added.) *Cf.* also Amended Finding of Fact No. 28.

Based on the foregoing findings, among others, the trial judge made his ultimate Finding No. 29, that "the plaintiffs have failed to prove to what extent they were damaged *by the conduct of the defendants* insofar as any breach of the partnership agreement is concerned." (Emphasis added.)

> "Damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable effort without undue risk, expense or humiliation." Restatement of the Law, Contracts, Sec. 336, p. 535.

The Arizona Supreme Court has said:

> "[I]t is the duty of the party injured by a breach of contract to minimize the damages as much as he reasonably can * * *." Rio Grande Oil Co. v. Pankey, 50 Ariz. 529, 73 P.2d 707, 710 (1937).

*See also* 25 C.J.S. Damages § 71. Nello L. Teer Co. v. Hollywood Golf Estates, Inc., 324 F.2d 669 (5th Cir. 1963), and

Commodity Credit Corp. v. Rosenberg Bros. & Co., 243 F.2d 504, 511 (9th Cir. 1957), where it was said:

> "It is the general rule that one who is injured by the wrongful acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and, to the extent that his damages are the result of his active and unreasonable enhancement thereof, or due to this failure to exercise such care, he cannot recover. He is bound to protect himself if he can do so with reasonable exertion or at a trifling expense, *and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided.* He must do nothing to aggravate his loss, but *must do all he can to mitigate or reduce it.* Campfield v. Sauer, 6 Cir., 189 F. 576." (Emphasis supplied).

 In short, we hold the Findings, Conclusions and Judgment of the district court are supported by substantial evidence, and under well recognized law; we cannot disturb them.

We affirm the judgment rendered below.