[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 11, 1989, the plaintiffs, Brookfield Associates and Edward McCarty (McCarty), filed a three count complaint against the defendant, Estate of Frank Clayton Bacon, and on January 19, 1990, the plaintiffs filed a revised complaint. In the first count of the revised complaint, the plaintiffs allege that in the fall of 1977, McCarty and Frank Bacon entered into a partnership agreement CT Page 2382 which was reaffirmed and amended by an instrument dated October 13, 1988. According to paragraph 14 (hereinafter referred to as the "buy-out provision"), "[u]pon the death of either partner, the surviving partner shall have the right to either purchase the interest of the decedent in the partnership or to terminate and liquidate the partnership business," and the purchase price shall be equal to the decedent's capital account at the end of the prior calendar year, increased by his share of the profits or decreased by his share of partnership losses for the period beginning of the calendar month in which the death occurred and decreased by withdrawals charged to his income account during such period. In paragraph eight, the plaintiffs allege that Bacon's capital account was overdrawn by $14,180.00.
Upon the death of Frank Bacon on November 20, 1988, McCarty, pursuant to the buy-out provision, exercised his right to purchase the decedent's interest by mailing a certified letter dated January 5, 1989 to the Executrix, Margaret Bacon. According to paragraph 11, since the capital account was overdrawn, said notice of McCarty constituted full performance by McCarty under the partnership agreement for the transfer to McCarty of decedent's partnership interest in Brookfield Associates. Therefore, since the Executrix refused and failed to repay the overdrawn capital account in violation of the partnership agreement, the plaintiffs seek monetary damages.
In the second count, after incorporating the allegations of the first count, the plaintiffs allege that McCarty and the decedent decided, based upon other things, public communications, conduct and circumstances occurring at or about the time of and preceding the sale to Bacon of the subject property, that it was in the best interest of Brookfield Associates to purchase a parcel of improved real property located at 101 Laurel Hill Road, Brookfield, Connecticut, which property is adjacent to real property owned by Brookfield Associates. According to paragraph 17, the decedent and McCarty agreed and understood that the decedent would purchase the Laurel Hill property, which purchase would enhance the partnership business operation of a bowling center, on behalf of Brookfield Associates. However, "[i]n contravention of the agreement and understanding between McCarty and the decedent and against the interest of Brookfield Associates, the decedent purchased CT Page 2383 the Laurel Hill property individually." As a result, the plaintiffs seek monetary damages equal to the reduction in value of Brookfield Associates caused by the decedent's failure to purchase the Laurel Hill property on behalf of Brookfield Associates.
In the third count, after incorporating paragraphs one through twenty-one of the revised complaint, the plaintiffs allege that the decedent purchased the Laurel Hill property as a fiduciary of Brookfield Associates; therefore, the decedent held title to the property as constructive trustee for Brookfield Associates, and breached his duties to the partnership by converting the partnership interest to his own use and benefit. As a result, the plaintiffs seek a decree of specific performance directing the Executrix to transfer the Laurel Hill property to McCarty, and an injunction restraining the Executrix from conveying, encumbering or in any manner disposing of the Laurel Hill property.
On July 11, 1990, the defendant filed an answer, nine special defenses and a counterclaim seeking an accounting. In the first special defense to the first count, the defendant alleges that the written partnership agreement is invalid, unenforceable, and of no force and effect because Paul K. Taormina and Karen Taormina (Taorminas) were admitted as partners, thereby dissolving the prior partnership agreement and creating a partnership at will governed by the Uniform Partnership Act (UPA). In the second special defense to the first count, the defendant alleges that the court should declare the written partnership agreement invalid as contrary to equitable principles because enforcement of paragraph 14 would cause a forfeiture of the decedent's interest in the partnership, and because the buy-out provision is unconscionable and would yield an inequitable result. In the third special defense to the first count, the defendant alleges that the agreement is invalid and unenforceable because the parties were mutually mistaken as to the meaning of the term "capital account" contained in the buy-out provision. In the fourth special defense to the first count, the defendant alleges that the court should not enforce the buy-out provision because said provision is against public policy. In the fifth special defense to the first count, the defendant alleges that the buy-out provision is vague, ambiguous and unenforceable, thereby precluding the court from fashioning a remedy or determining damages with CT Page 2384 specific certainty. Finally, the defendant alleges that the second and third counts are barred by laches and the statute of frauds.
On November 20, 1991, the plaintiff filed a motion for partial summary judgment as to the first count, accompanied by a memorandum of law, McCarty's affidavit, and the affidavit of Warren F. Malkin, the partnership's accountant. The court (Fuller, J.) denied this motion on December 31, 1991, without prejudice, because "[s]ummary judgment is usually not appropriate for complicated cases, and will not be granted in this case without argument of counsel." However, on February 7, 1992, the defendant filed a memorandum of law asserting that the court should deny the plaintiffs' motion for partial summary judgment, and the court should enter summary judgment for the defendant, because there are two mutual mistakes; namely, the "partners clearly intended that the Agreement would not apply to the bowling lanes lease and operations, but the underlying conveyance of real property which had already occurred during 1975," and "there was a mutual mistake as to the parties' understanding of the term `capital account.'" In addition, the defendant argues that the plaintiffs' motion should be denied because the Taorminas were admitted as partners, thereby dissolving the prior partnership agreement and the buy-out clause contained in the partnership agreement. Finally, the defendant argues that the plaintiffs' request for specific performance of the buy-out provision should be denied because the provision is inequitable and contrary to public policy as a gamble on each partner's life.
On September 11, 1992, the defendant filed an amended answer to include two special defenses directed to the plaintiff's second and third count, asserting that the second and third counts are barred by the statute of limitations, either General Statutes, Sec. 52-576 or Sec. 52-581. On September 25, 1992, the defendant filed a motion for summary judgment, which was accompanied by a supporting memorandum of law, on counts two and three of plaintiff's revised complaint, arguing that the second count is barred by the statute of frauds and the statute of limitations, and the third count is barred by laches.
On November 10, 1992, the court heard oral argument on the plaintiffs' motion for partial summary judgment and the CT Page 2385 defendant's motion for summary judgment, and on December 29, 1992, the plaintiffs filed a memorandum of law in opposition to the defendant's motion for summary judgment as to counts two and three of the plaintiff's complaint.
"[S]ummary judgment `shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Practice Book, Sec. 384; Lees v. Middlesex Ins. Co.,219 Conn. 644, 650, 594 A.2d 952 (1991). "The party moving for summary judgment `has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law.'" (Citation omitted.) Mingachos v. CBS, Inc., 196 Conn. 91, 111, 491 A.2d 368
(1985). "`However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury; Ardoline v. Keegan, 140 Conn. 552, 555, 102 A.2d 352
[1954]; the moving party for summary judgment is held to a strict standard . . .' of demonstrating his entitlement to summary judgment.'" (Citations omitted.) Kakadelis v. DeFabritis, 191 Conn. 276, 282, 464 A.2d 57 (1983). To satisfy this burden, "`[t]he movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . .'" State v. Goggin, 208 Conn. 606, 616,546 A.2d 250 (1988).
"[A] summary disposition should be rendered in the limited instances where the evidence is such that no room for disbelief could exist in the minds of the jury and in circumstances which would require a directed verdict for the moving party." (Citation omitted.) Yanow Teal Industries, Inc., 178 Conn. 262, 268-69, 422 A.2d 311 (1979). "In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Citations omitted.) United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 380, 260 A.2d 596
(1969). As a result, when deciding a motion for summary judgment, the court must view "the evidence . . . in the light most favorable to the nonmovant and he is given the benefit of all favorable inferences that can be drawn.'" CT Page 2386 (Citations omitted.) Catz v. Rubenstein, 201 Conn. 39, 49,513 A.2d 43 (1986). When applying this standard, "the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
At the hearing before this court on November 10, 1992, and in the memorandum of law submitted in support of the motion for partial summary judgment, the plaintiffs argue that the clear covenants of this partnership agreement govern the issue presented in the first count, leaving no genuine triable issue of fact. However, in response to this, the defendant argues that the partnership was dissolved when the Taorminas were admitted as partners into the partnership; therefore, the parties' rights are not governed by the written partnership agreement, which contained the buy-out provision, but are governed by the UPA.
In 1977, Paul Taormina began receiving 5 percent of the profits from Brookfield Lanes pursuant to a $20,000.00 promissory note which provided that "[i]n lieu of payment of the $20,000.00, the Taorminas will receive a five percent ownership interest at Brookfield lanes after January 1, 1977," and "[t]he Taorminas, McCarty and Bacon will all sign a partnership agreement similar to the one in effect between McCarty and Bacon as of this date." According to 59A Am.Jur. Partnership, Sec. 826 (1987), the general rule appears to he that any change in the personnel of the partnership dissolves the partnership.
 Where the UPA is in effect, the dissolution of a partnership can only be brought about as the Act provides, in the absence of specific provisions in a partnership contract governing the termination of partner's interests by dissolution, or expressly providing that the partnership will continue and dissolution and winding up are not required on the occurrence of certain events. The courts recognize, however, that dissolution may take place under certain circumstances not specifically enumerated in the Uniform Act, including, for example, the admission of a new partner to the firm, or a partner's withdrawal from the firm. CT Page 2387
59A Am. Jur. Partnership, Sec. 810 (1987). "A partnership is a contractual and fiduciary relation, dependent on the personality of its members, and the withdrawal or admission of a member changes so radically the contractual rights and duties inter se as to produce essentially a new relation, even though the parties contemplate no actual dissolution of the firm and continue on business under the original articles and with the same account books." (Emphasis added.) 59A Am.Jur. Partnership, Sec. 826 n. 37 (1987). See also Ellingson v., Walsh, O'Connor Barneson, 15 Cal.2d 673, 104 P.2d 507,509 (1940) ("[w]hen appellant became a member, the first partnership was, in legal theory, dissolved and a new partnership came into being composed of the old members and appellant"); Johnson v. Hill, 1 Ariz. App. 290, 402 P.2d 225,226 (1965) ("[i]t is a well-established general rule that an existing partnership is dissolved and a new partnership is formed whenever a partner retires or a new one is admitted. In other words, every change in the personnel of a firm works a dissolution. (Citation omitted.) This general rule would apply unless something in the agreement provides otherwise").
However, Connecticut has enacted the Uniform Partnership Act. General Statutes, Sec. 34-39 et seq.
 The Uniform Partnership Act does not appear to make the admission of a new partner a ground for dissolution. Several provisions of the Act support this proposition:
 (a) the general definition appears to require that there be a partner who ceases to be associated in carrying on the business, and this does not necessarily occur when a new partner is admitted;
 (b) admission of a new partner is not listed as either a cause of dissolution by operation of law or a ground for obtaining a judicial decree of dissolution; and
 (c) the Act provides that no person can become a member of a partnership without the consent of all the partners, thus apparently recognizing the admission of a partner into a CT Page 2388 continuing partnership.
59A Am. Jur. Partnership, Sec. 826 (1987), citing U.P.A., Secs. 29, 31, 32, 18(G).
 Admission of a partner is not included among the U.P.A. causes of dissolution and is not within the definition of dissolution under U.P.A. Sec. 29 as involving a dissolution. Although there is some authority [as cited above] supporting dissolution in this situation, nondissolution upon admission of a partner is clearly the better rule. The only justification for dissolving upon admission of a partner is that a new partner changes the close-knit relationship in a small partnership. In a very closely held partnership, however, each partner will ordinarily be able to veto admission of a new partner . . . so dissolution is not necessary. The power to veto new members is most likely to have been altered by contrary agreement only in the larger firms; in this type of firm, dissolution for admission of a new partner is unnecessary, potentially disruptive, and probably contrary to the expectations of the partners.
Alan R. Bromberg and Larry E. Ribstein, Bromberg and Ribstein on Partnerships, Sec. 7.07 (1991). Accordingly, it is found that the admission of a partner does not dissolve a partnership unless the partnership agreement provides otherwise.
In the present case, the partnership agreement entered into between McCarty and Bacon provides, in paragraph 12 entitled voluntary termination, "[t]he partnership may be dissolved at any time by unanimous agreement of the partners. . . ." As a result, it is clear that the parties could dissolve the partnership by mutual consent. Therefore, there is a question of fact as to whether McCarty and Bacon agreed to or intended to dissolve or voluntarily terminate the partnership agreement when the Taorminas were given an interest in Brookfield Lanes pursuant to the promissory note. In addition, there is a question of fact as to whether the parties intended to form a limited partnership with the Taorminas to lease, operate, and maintain the bowling CT Page 2389 facility, or whether the parties intended to admit the Taorminas into the general partnership, which, according to the defendant, was allegedly formed to purchase real estate to be leased to the limited partnership. To support this argument that the parties intended to form a limited partnership to operate the bowling facility, the defendant refers the court to a proposed limited partnership agreement, which provides:
 The purpose of the limited partnership is to lease, operate, and maintain a bowling facility described in Schedule A herein, all in accordance with a lease agreement by and between the undersigned and Brookfield Associates, a general partnership organized and existing under the laws of the State of Connecticut and having an office and place of business on Route 7, Brookfield, Connecticut.
It is well recognized "`that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.'" (Citations omitted.) (Emphasis added.) Connell v. Colwell, 214 Conn. 242,251, 571 A.2d 116 (1990).
 The question of whether a partnership exists between particular persons is a mixed question of law and fact. This means that what constitutes a partnership under established facts is a question of law for the court, but the existence of the facts necessary to bring the relation within the tests of partnership, or the determination whether a partnership exists under the evidence and the inferences reasonably drawn from the evidence, is a question of fact for the jury.
59A Am. Jur. Partnership, Sec. 210 (1987). Accordingly, it is found that the court should deny the plaintiffs' motion for partial summary judgment as to count one due to the following questions of fact:
(1) whether the Taorminas were admitted as general partners; CT Page 2390
(2) if the Taorminas were admitted as general partners, whether the parties intended that the partnership agreement entered into between McCarty and Bacon would control the partnership; and
(3) whether the parties intended to form a limited partnership to lease, operate, and maintain the bowling facility, as a distinct entity from the general partnership between McCarty and Racon.
In addition, it is noted that these questions of fact, coupled with the complexity of the case, preclude the granting of summary judgment as to counts two and three. Summary judgment "is . . . apt to be ill adapted to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial." (Emphasis added.) (Citations omitted.) United Oil Co. v. Urban Redevelopment Commission, supra, 375.
Accordingly, the court denies the defendant's motion for summary judgment as to counts two and three.
William J. McGrath, Judge