Melvin LENKIN, General Partner on Behalf of 14TH AND EYE STREETS ASSOCIATES, a District of Columbia limited partnership, Appellant,

v.

Robert M. BECKMAN, General Partner, and David M. Kirstein, General Partner, on Behalf of Beckman & Kirstein, a partnership, Appellees.

No. 89–684.

District of Columbia Court of Appeals.

Argued Feb. 6, 1990.
Decided May 23, 1990.

Jack C. Sando, Bethesda, Md., for appellant.

Richard T. Tomar, Washington, D.C., for appellees.

Before FERREN and STEADMAN, Associate Judges, and KERN, Senior Judge.

FERREN, Associate Judge:

This case concerns a landlord-tenant dispute between Melvin Lenkin, General Partner on behalf of 14th and Eye Streets Associates, and the partnership of Robert M. Beckman and David M. Kirstein. In May 1983, Lenkin, as landlord, entered into a ten-year lease with the partnership of Beckman, Farmer & Kirstein (B, F & K)—according to Lenkin, the predecessor in interest to Beckman & Kirstein (B & K)—for office space in a building on 14th and Eye Streets, N.W. The tenants, however, vacated the premises and terminated rental payments in late 1985, almost eight years before the lease expired. Before signing, the parties to the lease had inserted a clause that released the individual partners, on either side, as well as their successors in interest, from any personal liability under the lease. Lenkin appeals from a judgment based on a trial court decision which interpreted this clause as not only releasing Beckman and Kirstein from all personal liability, but also releasing the partnership, B & K, from all partnership liability for breach of the lease agreement. We reverse and remand.

## I.

The controversy centers on the interpretation of clause 23(b)[1] of the lease and on the rules governing partnership liability in the District of Columbia. The lease, dated May 20, 1983, was to run for ten years beginning on "September 1, 1983, or such earlier or later date upon reasonable completion of the premises as Landlord and Tenant shall agree." Upon reviewing the lease, the attorney for Lenkin's mortgagee wrote, in part, in a letter (dated June 17, 1983) to William Smyth of Walker & Dunlop, Inc.:[2]

> With respect to paragraph 23(b), I am concerned that Landlord has waived the right to enforce the provisions of the Lease against the individual partners of Tenant. It is much more difficult for Landlord to enforce the Lease if the individual partners of Tenant have no personal liability.

Lenkin responded by explaining, also in a letter (dated July 20, 1983) to Smyth:

> It is true that the liability of the Tenant in this lease is that of the partnership and not of the individual partners. However, in my business judgment, this was a point which was not of sufficient importance to risk losing the lead tenant in the building.

According to an affidavit of appellee Beckman: "On May 31, 1984, B F & K was dissolved and disbanded."[3] As a result, either Beckman "individually, undertook the obligations of the lease" (as Beckman asserts) or the newly-created firm of B & K undertook these obligations (as Lenkin contends). On October 2, 1985, Beckman informed Lenkin by letter—on B & K stationery—that "we" intend to vacate the premises by November 30, 1985 and to terminate "our" lease on that date. On January 22, 1987, Lenkin filed suit against Beckman and Kirstein, "on behalf of BECKMAN & KIR-

---

1. Section 23(b) of the lease provides:
   Landlord and Tenant as Individual or Partnership. If Landlord or Tenant or any successor in interest to Landlord or Tenant shall be an individual, joint venture, tenancy in common, firm or partnership, general or limited, there shall be no personal liability on such individual, or the general partners of such firm, partnership or joint venture, with respect to any of the provisions of this Lease, or any obligation arising therefrom or in connection therewith whatsoever.

2. There is nothing in the record explaining what role Smyth or his company played in this transaction.

3. There is no question that, as between the parties to this litigation, the firm of B, F & K was a partnership. The question whether, as among themselves, Beckman, Farmer, and Kirstein were partners is pending before this court in another case and is not relevant here. *Beckman v. Farmer,* Nos. 88–741 and 88–742.

STEIN, a partnership," seeking damages under the lease. Appellees filed a motion to dismiss, which Judge Salzman denied on May 20, 1987. Appellees later filed a motion for summary judgment, which Judge Murphy denied on February 1, 1989.

On March 13, 1989, the matter came to trial before Judge Rankin. On the second day of trial, the defendants moved for judgment in their favor, and the court granted the motion.[4] In its Memorandum Opinion and Order, dated March 28, 1989, the court concluded, "[u]pon consideration of the testimony and the facts adduced at trial and during discovery, and the admissions of the parties stated by counsel and witnesses in open court and contained in Answers to Interrogatories," that Lenkin had released Beckman and Kirstein, as individuals, from all liability. It further concluded, as a matter of law—citing *Day v. Avery*, 179 U.S.App.D.C. 63, 548 F.2d 1018 (1976), *cert. denied*, 431 U.S. 908, 97 S.Ct. 1706, 52 L.Ed.2d 394 (1977)—that, because a partnership entity cannot be sued in the District of Columbia, Lenkin could not obtain a judgment against the firm of B & K. Having thus eliminated the possibilities of personal and partnership liability, the court entered judgment in favor .of Beckman and Kirstein. Lenkin filed a timely appeal.

## II.

The first issue is our standard of review of the trial court's order. It is not clear from the record whether appellant finished presenting his case before the court granted defendants-appellees' motion for judgment.[5] Appellant represented at oral argument that he had not finished, and appellees have not suggested otherwise. The trial court, however, made written findings of fact and conclusions of law as required by Super.Ct.Civ.R. 52(a) when a judge, in response to a motion for involuntary dismissal, renders judgment on the merits under Super.Ct.Civ.R. 41(b). *See Marshall v. District of Columbia*, 391 A.2d 1374, 1379 (1978). The trial court's approach was anomalous, because Rule 41(b), by its terms, is unavailable until "[a]fter the plaintiff ... has completed the presentation of his [or her] evidence." .

Although the court's ruling did not neatly fit under Rule 41(b), it also did not conform to summary judgment procedure under Super.Ct.Civ.R. 56, where the court considers, first, whether any material fact is in dispute and then, if not, whether the moving party is entitled to judgment as a matter of law. *See Nader v. de Toledano*, 408 A.2d 31, 41–43 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). Typically, in attempting to demonstrate the absence of disputed material facts, the movant relies on affidavits and other documentary evidence, as does the opposing party. *See* Super.Ct.Civ.R. 56(c) (judge considers motion for summary judgment based on pleadings, depositions, answers to interrogatories, admissions on file, and affidavits). Trial testimony, followed by findings of fact, is alien to summary judgment.

We need not resolve whether the court's judgment is reviewable under Rule 41(b), even though the court ruled before the plaintiff completed his case, or under Rule 56, even though the court purported to resolve disputed material facts, or under some other approach. The judgment fails for another reason applicable under any rule or standard of review: an incorrect application of the law, to which we now turn.

## III.

According to the trial court, Lenkin conceded at trial that, by agreeing to the

---

4. The trial transcript was not designated part of the record on appeal. Usually, appellants must provide this court with either a trial transcript or a court-approved statement of proceedings and evidence. *Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 111 (D.C.1982). Appellant's failure to include either of these in the record, however, is not fatal to his claim. Appellant has met his burden of "present[ing] this court with a record sufficient to show affirmatively that error occurred." *Id.*

5. According to the docket sheets, plaintiff's case-in-chief was "heard in part" on March 13, and "heard in part" again the next morning. At this point the court heard and granted the defendants' motion for judgment. There is no notation that plaintiff had closed his case.

terms of clause 23(b) of the lease, he had released Beckman and Kirstein, individually, from liability under the lease. Lenkin argues on appeal, however, that the assets of the partnerhsip—wherever located—are nonetheless legally available for satisfaction of the partnership's obligations under the lease.

Lenkin is correct in asserting that partnership law in this jurisdiction does distinguish between partnership property and personal property. A partner's share of the profits and surplus of the partnership is personal property, D.C.Code § 41–125 (1986), but "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership," and "property acquired with partnership funds" constitute partnership property. *Id.* § 41–107(a), (b) (1986). *See also id.* §§ 41–109, –124, –139(8) (1986). In entering judgment for Beckman and Kirstein, the trial judge disregarded these distinctions, apparently making one or more of the following assumptions: (1) all partnership property is inherently personal property; (2) the partnership property of the original lessee, B, F & K, automatically became personal property upon dissolution of that firm;[6] or (3) the partnership property, even in retaining a "partnership" character, could not be reached in the individual partners' hands simply because a partnership, as such, cannot be sued.[7] Each of these assumptions fails.

### A.

■ The assumption that all partnership property is inherently personal property (and thus insulated from Lenkin's claim by clause 23(b) of the lease) presumably would be based on the common law principle that, ultimately, the partners are individually responsible for partnership debts.[8] The argument then would be that because the partners' liability is individual, the assets exposed to creditors must be personal. This argument is easily dismissed. A partner's individual liability for partnership debts does not theoretically preclude the partner's holding "partnership" property, as well as "personal" property, both of which are exposed to claims for partnership debts.

The common law right of creditors to reach the personal property of individual partners in satisfaction of partnership debts is incorporated into the Unif. Partnership Act (U.P.A.) § 15, 6 U.L.A. 174 (1914), adopted in the District of Columbia as D.C.Code § 41–114 (1986). *See* A. Bromberg & L. Ribstein, Bromberg and Ribstein on Partnership § 6.01(b) at 6:3 & n. 3, § 6.02(f) at 6:23; *Penner v. De Nike,* 288 Mich. 488, 285 N.W. 33 (1939) (gist of partnership relation is mutual agency and joint liability); *Johnson v. Gill,* 235 N.C. 40, 44, 68 S.E.2d 788, 791 (1952) (common law rule of joint and several liability of partners in torts incorporated into U.P.A.). The import of this creditor's right, however, is not that partnership property, as a matter of law, is indistinguishable from personal property. It is true that as long as any partner has available property of any nature, including personal property, there will be a source of assets from which the partnership creditor may ultimately obtain payment. But in certain circumstances, at least, the creditor may have to exhaust partnership property before proceeding against the partner's personal property—a rule that inherently makes clear there is a difference between these two kinds of property. In Maryland,

---

6. In stating the facts, we noted that Beckman asserts he "individually" undertook the obligations of the lease when the partnership of B, F & K "was dissolved and disbanded." Lenkin disputes this contention. For our purposes at this point, we are considering only whether, as a matter of law, partnership property automatically becomes the personal property of the partners upon dissolution of the partnership. We address the disputed factual issue later in Part IV.

7. In the final paragraph of its order, the trial court wrote:

> A partnership cannot be sued in the District of Columbia. Only the individual partners can be sued. The plaintiff, having released the individual partners from all liability, cannot obtain a judgment against the partnership.

8. *See* A. Bromberg & L. Ribstein, Bromberg and Ribstein on Partnership § 1.03(c)(4) at 1:28 (1988).

for example, the Court of Appeals, relying on the U.P.A., common law, and a Maryland statute identical to D.C.Code § 41–114, ruled that, as to contractual obligations of the partnership (in contrast with tort claims against it), a partnership creditor must exhaust partnership assets before reaching a partner's individual assets. *Phillips v. Cook*, 239 Md. 215, 223, 210 A.2d 743, 748–49 (1965). *See also* D.C. Code § 41–139(1)–(3) (upon dissolution, partnership property shall be applied in satisfaction of liabilities to partnership creditors before partners shall be called upon to make contributions for that purpose).

■ It follows from the distinction between these two kinds of property, therefore, that when a creditor pursues a partnership debt where the partners, by contract with the creditor, have insulated themselves from personal liability, the creditor will not necessarily be precluded from reaching partnership property in the partners' hands. Such preclusion will occur only if the contract, when properly interpreted, prevents a claim against both "personal" *and* "partnership" property.

### B.

■ The assumption that all partnership property automatically becomes personal property upon dissolution of the partnership (and thus would be insulated against Lenkin's claim by clause 23(b) of the lease) is also incorrect. A partnership is not terminated for all purposes upon dissolution; it "continues until the winding up of partnership affairs is completed." D.C.Code § 41–129 (1986). "The dissolution of a partnership affects only future obligations of the business. As to past transactions the partnership continues until it shall have satisfied all of its pre-existing obligations." *Yahr–Donen Corp. v. Crocker*, 80 Cal. App.2d 675, 678, 182 P.2d 209, 211 (1947). *See also Stark v. Utica Screw Prods., Inc.,* 103 Misc.2d 163, 425 N.Y.S.2d 750, 753 (1980) (partnership in dissolution continues to be responsible for its obligations and debts). Once in dissolution, moreover, the partnership is deemed to have two catego-ries of assets: "partnership property" and the "contributions of the partners necessary for the payment of all the liabilities" of the partnership, beginning with those owing to "creditors other than partners." D.C.Code § 41–139(1), (2); *see* U.P.A. §§ 30, 40(a), 40(b), 6 U.L.A. 367, 468–69. Partnership property must be exhausted before partners are required to contribute to the assets of the partnership for the purpose of satisfying any of the enumerated categories of partnership liabilities. *See* D.C.Code § 41–139(1)–(3).

If, as in this case, a creditor permits a partner to contract out of personal liability—so that there is no obligation to make a "contribution" to satisfy the creditor—this does not necessarily eliminate creditor access to the other kind of partnership asset, "partnership property," whoever happens to have it. Accordingly, vis-a-vis creditor Lenkin, the partnership assets of B, F & K, upon dissolution, did not necessarily become the personal property—unreachable by virtue of clause 23(b) of the lease—of Beckman, Kirstein, or anyone else.

### C.

■ Finally, we address the assumption that partnership property cannot be reached because a partnership, as such, cannot be sued. See *supra* note 7. We agree with Judge Rankin that, under the law of this jurisdiction, a partnership entity lacks capacity to be sued. *Day,* 179 U.S. App.D.C. at 67, 548 F.2d at 1022 ("there is no statute in the District permitting suit by or against a partnership in its common name[;] ... by the common law of the District a partnership is not a jural entity capable of suing or being sued"). On the other hand, a partnership may be held accountable for partner wrongs, provided the action is "brought in the names of the partners, with service of process upon them individually." *Affie, Inc. v. Nurel Enters., Inc.,* 607 F.Supp. 220, 221 (D.D.C. 1984). *See* Bromberg & Ribstein § 1.03(c)(3) at 1:26 ("A partnership's separate existence in litigation has been recognized apart from whether it can sue or be sued in its own name."). In sum, the rule precluding suit against a partnership entity does not prevent suit against the partner-

ship through an action against the individual partners.

## IV.

We have established that a partnership may be sued in the District of Columbia by naming and serving its partners; that partnership property is distinguishable from personal property; that partnership property does not lose its character, as such, upon dissolution; and that creditors, therefore, at least theoretically, may reach partnership assets without regard to the partners' personal liability. We now consider the trial court's judgment for appellees.

■ Having identified the applicable principles of partnership law, we can see that the lease agreement itself will not resolve material factual issues without resort to extrinsic evidence, *see Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092–93 (D.C. 1988), and that the trial court's findings of fact based on the extrinsic evidence presented—even if we could properly rely on them—do not address issues that must be resolved, such as: (1) whether the parties, in negotiating clause 23(b) of the lease, intended to immunize only the individual property of the partners and not their partnership property, and (2) whether the parties, in negotiating clause 23(b), intended to immunize any successor in interest to B, F & K against liability for B, F & K partnership property in the successor's hands. Implicit in the resolution of these questions is the need to identify B, F & K's successor in interest. The answers may turn, in part, on the parties' intent in negotiating clause 23(b) or on the contractual understandings established among the parties when B, F & K turned over the premises to B & K, a partnership. Lenkin contends that B & K undertook all of B, F &

K's obligations under the lease;[9] Beckman maintains that he "individually, undertook the obligations of the lease," implying a novation of some sort that affects Lenkin's claim.[10]

Because resolution of these still-disputed issues turns on the credibility of extrinsic evidence and/or on a choice among reasonable inferences to be drawn from extrinsic evidence, we leave it to the trial court to sort out the facts on the correct legal premises. *See* RESTATEMENT (SECOND) OF CONTRACTS § 212(2) (1979) ("A question of interpretation of an integrated agreement is to be determined by the trier of fact if it depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence."). *See also Dodek*, 537 A.2d at 1092; *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983); *International Bhd. of Painters and Allied Trades v. Hartford Accident and Indem. Co.*, 388 A.2d 36, 43 (D.C.1978); *1901 Wyoming Ave. Coop. Ass'n v. Lee*, 345 A.2d 456, 461 n. 8 (D.C. 1975). We also leave to the trial court resolution of additional legal questions likely to follow from its factual findings, *e.g.*, (1) whether B, F & K property in the hands of B & K, a partnership, or of Beckman and/or Kirstein, individually, is subject to Lenkin's claim, and (2) notwithstanding disposition of B, F & K property, whether B & K property in the hands of B & K, a partnership, or of Beckman and/or Kirstein, individually, is subject to Lenkin's claim. Accordingly, we reverse and remand the case for further proceedings.

*So ordered.*

---

**9.** We leave open the possibility that the partnership of B & K assumed the obligation, if not explicitly, then as a partnership by estoppel. *See* D.C.Code § 41–115 (1986); *see also* U.P.A. § 16, 6 U.L.A. 195–96.

**10.** According to D.C.Code § 41–135(c) (1986), however:

Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability

to any creditor of the partnership who, *knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations.*

(Emphasis added). If Beckman assumed the obligations of the lease through steps described by this statute, then we note that as far as we can tell from the record, Beckman has not shown, nor has Lenkin conceded, that Lenkin knew of any such agreement and/or consented to any material alteration of lease obligations.